**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VALERIE HAWKINS** | ) | |
| 5396 HURON RD., | ) | **CASE** |
| LINHURST, OH 44124 | ) | |
| | ) | |
| *Plaintiff* | ) | **JUDGE** |
| | ) | |
| **vs.** | ) | **MAGISTRATE** |
| | ) | |
| **METRO HEALTH SYSTEM** | ) | |
| 2500 METROHEALTH DR., | ) | **COMPLAINT** |
| CLEVELAND, OH 44109 | ) | |
| | ) | |
| *Defendant* | ) | |

Now comes Plaintiff, Valerie Hawkins, by and through her undersigned legal counsel, Attorney

Isaac Tom Monah, and hereby submits to this Honorable Court her Complaint as follows:

## I.    PARTIES

1. Plaintiff, Valerie Hawkins, is an individual and resident of the State of Ohio.

2. Defendant, The MetroHealth System ("MetroHealth"), is a healthcare organization

   operating within the State of Ohio and employing well over fifteen (15) employees during

   all relevant times.

3. At all relevant times, MetroHealth acted through its agents, managers, supervisors, and

   executives, including but not limited to Deborah Southerington, Alroy Gibson, and Jane

   Dulski, who were acting within the course and scope of their employment.

## II.    JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and related federal statutes prohibiting discrimination and retaliation in employment.

5.  Venue is proper in this District because the unlawful employment practices described herein occurred within this District and Defendant conducts substantial business within this District.

6.  Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")

7.  The EEOC issued Plaintiff a Notice of Right to Sue.

8.  The Plaintiff has filed this action within ninety (90) days of receiving the Notice of Right to Sue.

## III.    FACTUAL ALLEGATIONS

6.  Plaintiff began working for MetroHealth on or about September 26, 2022, and later worked within the Human Resources Department beginning January 2024.

7.  Throughout her employment, Plaintiff performed her duties competently and consistently upheld MetroHealth's professional standards.

8.  Despite her qualifications and performance, Plaintiff was subjected to discriminatory and retaliatory treatment by members of MetroHealth's leadership.

9.  In particular, Deborah Southerington, Senior Vice President of Human Resources, began treating Plaintiff differently than similarly situated younger and white employees, frequently disregarding Plaintiff's contributions and subjecting her to heightened scrutiny.

10. The discriminatory treatment created a hostile and degrading work environment in which Plaintiff was routinely undermined and treated as inferior.

11. In October 2023, Plaintiff participated in a formal complaint process concerning the conduct of a colleague, Amanda Calabrese, who maintained a professional relationship with Ms. Southerington.

12. After Plaintiff provided information in connection with that complaint, the treatment she received within the workplace materially changed.

13. Following Plaintiff's participation in the complaint process, management began engaging in a pattern of retaliatory conduct.

14. Among other actions, Plaintiff was subjected to unjustified disciplinary scrutiny, including a written warning alleging "rudeness" during a meeting, an allegation Plaintiff firmly denies.

15. Plaintiff also sought opportunities to transfer internally out of the Human Resources department in order to escape the increasingly hostile environment.

16. Despite applying for several internal positions, Plaintiff's transfer requests were repeatedly denied without legitimate justification.

17. These denials prevented Plaintiff from advancing within MetroHealth and effectively trapped her within a hostile work environment.

18. On March 8, 2024, Plaintiff again participated in a workplace complaint process involving allegations of discrimination against MetroHealth personnel.

19. Plaintiff provided information regarding discriminatory and harassing conduct she had witnessed.

20. Following this participation, Plaintiff experienced further retaliation within the workplace.

21. At or around this time, managerial conduct toward Plaintiff escalated significantly.

22. In September 2024, Plaintiff participated in a meeting with Deborah Southerington, Amanda Calabrese, and Alroy Gibson, who had recently assumed a leadership role within Human Resources.

23. After the meeting, Mr. Gibson contacted Plaintiff and angrily reprimanded her for behavior that had been acceptable when performed by other meeting participants.

24. During this conversation, Mr. Gibson directed Plaintiff to behave differently in meetings, particularly when interacting with Caucasian colleagues, and imposed expectations not applied to others.

25. Plaintiff complied with these directives despite believing they were unjustified and discriminatory.

26. Shortly thereafter, Plaintiff learned that Ms. Southerington had instructed Mr. Gibson to discipline her for alleged misconduct during the meeting.

27. The circumstances surrounding the incident strongly suggested that the disciplinary action had been orchestrated as a pretext to reprimand Plaintiff.

28. In November 2024, Mr. Gibson began making repeated inquiries regarding Plaintiff's future employment plans and how much longer she intended to continue working.

29. During one conversation, Mr. Gibson suggested that Plaintiff should seek employment at a library where the environment would involve "less stress."

30. Plaintiff reasonably understood these statements as reflecting discriminatory assumptions regarding her age.

31. Concerned about the ongoing discrimination and retaliation, Plaintiff filed an internal complaint against MetroHealth and Ms. Southerington in November 2024.

32. Plaintiff later participated in an investigative meeting conducted by MetroHealth's legal department in December 2024.

33. Rather than addressing the underlying misconduct, the investigation failed to meaningfully examine Plaintiff's allegations.

34. Shortly thereafter, Plaintiff's work environment deteriorated further.

35. Mr. Gibson began assigning Plaintiff administrative tasks inconsistent with her role while younger colleagues were not subjected to similar treatment.

36. Plaintiff was also repeatedly directed to provide coverage for the HR office, even though office coverage was voluntary and other employees were not asked to perform the same duties.

37. Plaintiff objected to the disparate treatment but was nevertheless pressured into complying.

38. Plaintiff took medical leave in December 2024 and returned to work in January 2025.

39. Upon her return, the retaliatory conduct intensified.

40. Management began sending emails containing inaccurate statements regarding Plaintiff's work performance and competence.

41. Plaintiff repeatedly raised concerns that these communications were undermining her professional reputation.

42. Despite these complaints, MetroHealth management failed to correct the conduct.

43. In February 2025, Plaintiff raised concerns directly with Mr. Gibson that his conduct constituted discrimination, retaliation, and harassment.

44. Rather than addressing the concerns, management initiated disciplinary proceedings against Plaintiff based on vague and unsupported allegations.

45. When Plaintiff requested examples of alleged performance deficiencies, none were provided.

46. Around the same time, significant portions of Plaintiff's job responsibilities were removed and reassigned to a younger colleague.

47. Plaintiff was given no legitimate explanation for these removals despite repeatedly requesting one.

48. Plaintiff reasonably understood these actions to be retaliatory.

49. On March 28, 2025, Plaintiff escalated her concerns to MetroHealth leadership, including legal and compliance officials, documenting discrimination, retaliation, and hostile working conditions.

50. MetroHealth initiated an internal review but ultimately dismissed Plaintiff's concerns as "unsubstantiated."

51. The investigation failed to address key evidence and ignored the pattern of discriminatory conduct Plaintiff had documented.

52. In July 2025, Plaintiff was called into a meeting with Mr. Gibson and Employee & Labor Relations personnel where she was issued a verbal warning based on allegations she demonstrated were inaccurate.

53. Despite evidence contradicting the accusations, the disciplinary action was not withdrawn.

54. Shortly thereafter, on or about July 18, 2025, MetroHealth terminated Plaintiff's employment.

55. The stated justification for Plaintiff's termination was pretextual.

56. The termination occurred after Plaintiff repeatedly complained of discrimination and retaliation and after she participated in protected activity under federal law.

57. Defendant's conduct was intentional, willful, and carried out with reckless disregard for Plaintiff's federally protected rights.

58. As a direct and proximate result of Defendant's actions, Plaintiff suffered loss of income, loss of employment benefits, emotional distress, humiliation, and damage to her professional standing.

## COUNT I

Racial Discrimination

(Title VII – 42 U.S.C. §2000e et seq.)

59. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

60. Plaintiff is a member of a protected racial class.

61. Plaintiff was qualified for her position and performed her duties satisfactorily.

62. Defendant subjected Plaintiff to disparate treatment compared to similarly situated employees outside her protected class.

63. Defendant ultimately terminated Plaintiff's employment under circumstances giving rise to an inference of discrimination.

64. Defendant's actions constitute unlawful race discrimination in violation of Title VII.

## COUNT II

Age Discrimination

(ADEA – 29 U.S.C. §621 et seq.)

65. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

66. Plaintiff is over the age of forty and therefore within the class protected by the ADEA.

67. Defendant subjected Plaintiff to discriminatory treatment, including repeated inquiries regarding her retirement plans and suggestions she should seek less demanding employment.

68. Defendant removed job responsibilities from Plaintiff and treated younger employees more favorably.

69. Defendant ultimately terminated Plaintiff's employment because of her age.

70. Defendant's conduct constitutes unlawful age discrimination.

**COUNT III**

Retaliation

(Title VII and ADEA)

71. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

72. Plaintiff engaged in protected activity by reporting discrimination and participating in workplace investigations.

73. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions including discipline, removal of job duties, increased scrutiny, and ultimately termination.

74. A direct causal relationship exists between Plaintiff's protected activity and the adverse employment actions taken against her.

75. Defendant's actions constitute unlawful retaliation.

**COUNT IV**

Hostile Work Environment

76. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

77. Plaintiff was subjected to unwelcome harassment and discriminatory conduct based on race and age.

78. The harassment was severe and pervasive and altered the conditions of Plaintiff's employment.

79. Defendant knew or should have known of the harassment but failed to take corrective action.

80. As a result, Plaintiff endured an abusive and hostile working environment.

**DAMAGES**

81. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including but not limited to:

- Lost wages and employment benefits

- Front pay or reinstatement

- Compensatory damages for emotional distress

- Liquidated damages under the ADEA for willful violations

- Attorney's fees and litigation costs

- Pre- and post-judgment interest

- Any other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award all relief permitted by law, including damages, equitable relief, attorney's fees, costs, interest, and any additional relief this Court deems just and proper.

Respectfully submitted,

*/s/ Isaac Tom Monah*
Isaac Tom Monah, Esq. (OH 0098789)
**MONAH LAW OFFICES, INC.**
3401 Enterprise Parkway, Ste. 310
Beachwood, OH 44122
Phone: 216-501-9119
Fax: 216-378-7505
Email: tom@monahlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Isaac Tom Monah*
ISAAC TOM MONAH
*Attorney for Plaintiff*
